UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GULF ISLAND SHIPYARDS, LLC<br><br>VERSUS<br><br>LASHIP, L.L.C., *in personam*; REEL PIPE, L.L.C., *in personam;* and M/V BETTY CHOUEST, bearing Official No. 1193951, her engines, tackle, furniture, apparel, appurtenances, etc., *in rem* | CIVIL ACTION NO.<br><br>IN ADMIRALTY,<br>F.R.C.P. 9(h) AND RULE C<br><br>JUDGE:<br><br>MAGISTRATE: |

## VERIFIED COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Gulf Island Shipyards, LLC, and for its Verified Complaint against LaShip, L.L.C., *in personam*; Reel Pipe, L.L.C., *in personam;* and the M/V BETTY CHOUEST, bearing Official No. 1193951, her tackle, furniture, apparel, appurtenances, etc., *in rem*, (hereinafter "the Vessel"), stating an admiralty and maritime claim within this Honorable Court's admiralty and maritime jurisdiction in accordance with Rule 9(h) of the Federal Rules of Civil Procedure and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, with respect, alleges upon information and belief as follows:

### JURISDICTION AND PARTIES

I.

Jurisdiction is proper in accordance with 28 U.S.C. § 1333, Rule 9(h) of the Federal Rules of Civil Procedure, and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims. Venue is also proper in this district in accordance with 28 U.S.C. § 1391(b)(2) and (d) and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

II.

At all material times, Plaintiff, Gulf Island Shipyards, LLC ("GIS") was and now is a limited liability company organized under the laws of the State of Louisiana and doing business within the State of Louisiana, and within the jurisdiction of this Honorable Court.

III.

Upon information and belief, Defendant LaShip, L.L.C. ("LaShip") was and now is a Louisiana limited liability company doing business within the State of Louisiana, and within the jurisdiction of this Honorable Court, and was and is a shipyard and/or wharf who, at all material times, was and is in custody and possession of the Vessel.

IV.

Upon information and belief, Defendant Reel Pipe, L.L.C. ("Reel Pipe") was and now is a Louisiana limited liability company doing business within the State of Louisiana, and within the jurisdiction of this Honorable Court, and is the owner or disponent owner of the offending vessel, M/V BETTY CHOUEST, and, as such is liable for her actions.

V.

At all material times, Defendant, the Vessel, M/V BETTY CHOUEST, bearing Official No. 1193951, was and still is a U.S.-flagged offshore supply vessel, owned by Reel Pipe. The *in rem* defendant vessel is now or will during the pendency of this lawsuit be, upon the navigable waters of Louisiana, within this district and within the jurisdiction of this Honorable Court.

**FACTS AND CLAIMS**

VI.

As of August 2021, LaShip was mooring approximately fifteen to twenty vessels, all believed to be owned and operated by Edison Chouest Offshore, Inc. or its related and affiliated

companies, such as Reel Pipe, LLC, and including the M/V BETTY CHOUEST, at the LaShip facility. LaShip was responsible for mooring these vessels at its facility on the Houma Navigation Canal ("HNC").

VII.

Plaintiff, Gulf Island Shipyards, LLC, owns and/or operates a facility located on the HNC downstream of the LaShip facility.

VIII.

Additionally, GIS was in custody and control of two vessels (WILD HORSE and WAR HORSE) moored on the west side of the HNC at a facility owned by Bollinger Houma Shipyards, LLC ("Bollinger"), pursuant to a lease arrangement for the dockside area.

IX.

On or about August 29, 2021, Hurricane Ida made landfall in Houma, Louisiana as a destructive Category 5 hurricane with sustained winds exceeding one hundred and fifty miles per hour (150 mph).

X.

At all material times, LaShip had responsibility for properly mooring the M/V BETTY CHOUEST and the other vessels at LaShip's facility in Houma, Louisiana, and for ensuring that these vessels could withstand reasonably anticipated weather, and remain moored and in place.

XI.

Prior to Hurricane Ida, GIS had moored the WILD HORSE and the WAR HORSE according to approved conditions mooring plans, and these vessels were moored to withstand reasonably anticipated weather conditions.

XII.

Based on the weather forecasts in advance of Hurricane Ida's landfall, it was reasonably foreseeable that improperly moored vessels could break free of their moorings during the storm, and further, that the area around the HNC would be subject to an intense Category 5 hurricane.

XIII.

On information and belief, and despite this forecast, LaShip and/or Reel Pipe took no additional steps to provide additional mooring, other preventative measures or to otherwise secure the vessels in advance of Hurricane Ida.

XIV.

Upon information and belief, the M/V BETTY CHOUEST and the other vessels at the LaShip facility were not properly moored and, as a result, broke away from their moorings during Hurricane Ida.

XV.

All of the vessels moored at the LaShip facility, estimated to be fourteen total, broke free of their inadequate and improper moorings during Hurricane Ida.

XVI.

All of these vessels broke free and ended up free-floating in the HNC, moving southerly and striking and damaging the WAR HORSE and the WILD HORSE, as well as various docks and appurtenances. The vessels, with the exception of the BETTY CHOUEST, ended up well south of the GIS facility, and were retrieved by LaShip in the days following the hurricane.

XVII.

After the M/V BETTY CHOUEST broke away from her inadequate moorings, the vessel turned in a southerly direction and proceeded bow first down the channel. The vessel impacted

with and caused significant damage to the WILD HORSE, evidenced by a large gash on the starboard side of the M/V BETTY CHOUEST and corresponding orange paint markings and significant impact damage on the WILD HORSE. Based upon the extent of the damage impact, the M/V BETTY CHOUEST was moving at a high rate of speed when it struck the moored WILD HORSE.

XVIII.

After alliding with the WILD HORSE, the M/V BETTY CHOUEST became attached to the WILD HORSE and overwhelmed the mooring system used to secure the WILD HORSE, causing the M/V BETTY CHOUEST and the WILD HORSE to eventually drift unmoored into the HNC. Alternatively, the force of impact to the mooring system caused by this allision – between a moving vessel (M/V BETTY CHOUEST) and the moored, stationary vessel (WILD HORSE) overwhelmed and/or compromised the mooring system.

XIX.

The breakaway of the M/V BETTY CHOUEST and other vessels was caused in whole or in part by the negligence and/or unseaworthiness of the Vessel, the negligence of LaShip, Reel Pipe, and/or the negligence of those for whom LaShip, Reel Pipe, and/or the Vessel are liable, jointly and severally, in the following nonexclusive respects:

(a) Unseaworthiness of the vessels in that they were not properly moored and/or not properly equipped with adequate mooring lines;

(b) Negligence in the failure to properly moor the vessels prior to the landfall of Hurricane Ida;

(c) Negligence in the failure to properly monitor and control the vessels during the storm;

(d) Negligence in the failure to ensure that the vessels were in a safe and secure berth prior to the storm;

(e) Violation of the Oregon, Louisiana, and/or Pennsylvania Rules; and,

(f) All other acts of negligence, fault, and/or unseaworthiness that will be revealed in discovery of this matter and proven at trial.

XX.

The M/V BETTY CHOUEST, attached to the WILD HORSE, continued to drift in the HNC in a southerly direction, eventually striking GIS's dock, a work barge owned by GIS and a ferry under construction at the GIS facility, the M/V SALVO, evidenced by impact damage on the the M/V Salvo and corresponding orange paint markings.

XXI.

Post-storm, the vessels came to rest in GIS's facility within the jurisdiction of this Honorable Court.

XXII.

As a result of the allision of the M/V BETTY CHOUEST with its facility, and the aforementioned vessels for which GIS is contractually obliged to repair, GIS suffered and continues to suffer losses in the form of physical damage to the WILD HORSE and WAR HORSE, M/V SALVO, survey and investigatory expenses, costs to clear the channel, physical damage to its facility and related structures, all of which require surveying, inspection, replacement, and repair of various components of the facility and involved vessels.

XXIII.

GIS specifically pleads the legal presumption of fault otherwise known as the Rule of *The Oregon*, the legal presumption of causation otherwise known as the Rule of *The Pennsylvania*, and the legal presumption of fault otherwise known as the Rule of *The Louisiana*.

XXIV.

LaShip, Reel Pipe and the M/V BETTY CHOUEST are, jointly and severally, legally liable to GIS for the damages sustained, as itemized below.

XXV.

Pursuant to the general maritime law, GIS is entitled to assert a maritime tort lien against the M/V BETTY CHOUEST, and/or any other vessels identified as causing damage to GIS.

XXVI.

GIS is entitled to recover pre-judgment interest at the Louisiana judicial rate or federal rate of interest (whichever is greater) on its damages through the date of entry of the judgment, and post-judgment interest until paid, all costs of these proceedings, any fees or expenses associated with this proceeding, and for the attorney's fees incurred in bringing this action.

XXVII.

As a direct result of the aforementioned negligence, fault and actions, GIS suffered significant damages including, but not limited to the following:

1. Cost of repair, including labor, materials and incident expenses, to the WILD HORSE, WAR HORSE, the M/V SALVO and GIS' facility;

2. Downtime and/or losses for surveys and repairs;

3. Damage to the Bollinger bulkhead for which GIS was leasing and is contractually obligated to repair;

4. Other incidental and related expenses including, but not limited to, survey expenses, incident response, survey assistance and expenses, and overhead costs;

5. Potential lost revenues in the future as a result of downtime;

6. Any other damages established at trial.

**WHEREFORE**, Plaintiff, Gulf Island Shipyard, LLC prays:

1. For judgment *in personam* against defendant, LaShip, L.L.C., with interest at the contractually-agreed rate and/or pre-judgment interest, expenses, attorney's fees and costs;

2. For judgment *in personam* against defendant, Reel Pipe, L.L.C., with interest at the contractually-agreed rate and/or pre-judgment interest, expenses, attorney's fees and costs;

3. For Judgment *in rem*, against the M/V BETTY CHOUEST in the full amount due as set forth herein, including pre-judgment interest, costs, seizure expenses and all attorney's fees;

4. That defendants be cited to appear and answer the matters aforesaid; and

5. That this Honorable Court grant Plaintiff such other and further relief which it may deem just and proper.

This 25th day of January, 2022.

Respectfully submitted,

*/s/ L. Etienne Balart*
L. ETIENNE BALART (# 24951)
LAUREN C. MASTIO (# 33077)
SARA B. KUEBEL (# 38305)
JONES WALKER LLP
201 St. Charles Avenue, 48th Floor
New Orleans, Louisiana  70170-5100
Telephone: 504-582-8584
Facsimile:  504-589-8584
Email:  ebalart@joneswalker.com
           lmastio@joneswalker.com
           skuebel@joneswalker.com
***Attorneys for Gulf Island Shipyards, LLC***