UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GULF ISLAND SHIPYARDS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO:   22-154** |
| **LASHIP, L.L.C.,** *in personam***; REEL PIPE, L.L.C.,** *in personam***; and M/V BETTY CHOUEST, bearing Official No. 1193951, her engines, tackle, furniture, apparel, appurtenances, etc.,** *in rem* | **SECTION: "L" (4)** |

## ORDER

Before the Court is Bollinger Houma Shipyards L.L.C.'s **Motion to Reconsider Bollinger's Motion to Intervene (R. Doc. 25)** seeking reconsideration of this Court's prior decision of its Motion to Intervene (R. Doc. 13) in this action as Plaintiff in Intervention pursuant to Federal Rule of Civil Procedure 24 and file the attached complaint. The motion is opposed. R. Doc. 29.

I.    **Background**

**A. Introduction**

On August 29, 2021, Hurricane Ida made landfall in Louisiana and progressed over Houma, including the Houma Navigation Canal.  As a result of the storm, two vessels broke away causing damage to Gulf Island Shipyard, LLC's ("Gulf Island") and Bollinger's facilities allegedly due to the improperly moored vessels which was in the care and custody of the defendants. R. Doc. 1-2.  At the time of Hurricane Ida, Gulf Island was in custody and control of two vessels under construction, namely the M/V WILD HORSE and M/V WAR HORSE, which were moored on the west side of the Houma Navigation Channel, a facility owned by Bollinger Houma Shipyards L.L.C. ("Bollinger"). *Id*. These two vessels were docked at Bollinger's facility pursuant to a lease agreement between Bollinger and Gulf Island.  *Id*.

On January 25, 2022, Gulf Island filed the above-referenced action, naming LaShip, L.L.C, *in personam* ("LaShip") ; Reel Pipe, L.L.C., *in personam*; and the M/V BETTY CHOUEST , *in rem*, as defendants (collectively, "Defendants"). Gulf Island contends that the BETTY CHOUEST, which was moored at LaShip's facility upstream, was improperly moored, broke away during the storm, allied with the WILD HORSE and WAR HORSE, and subsequently damaged Bollinger's facility. R. Doc. 15.

Gulf Island seeks to recover damages in the above-captioned matter against Defendants for "[d]amage to the Bollinger bulkhead for which Gulf Island was leasing and is contractually obligated to repair." *Id*. Gulf Island seeks damages for the costs of repair, including labor materials, and incidental expenses, to the WILD HORSE, WAR HORSE, the M/V SALVO and  the Gulf Island's facility. *Id*. Gulf Island also seeks compensation for the damage to Bollinger's facility for which Gulf Island is contractually obligated to repair pursuant to its lease agreement. *Id*.

### B. Bollinger's Previous Motion for Intervention and This Court's Decision

On May 26, 2022, Bollinger filed through counsel with Phelps Dunbar, who also represented defendants LaShip, Real Pipes, LLC and the M/V BETTY CHOUEST, a Motion to Intervene. *See* R. Doc. 13. The motion sought leave to intervene in this action as Plaintiff in Intervention pursuant to Fed. R. Civ. P. 24. Bollinger sought intervention as of right under Fed. R. Civ. P. 24(a)(2) and permissively pursuant to Fed. R. Civ. P. 24(b)(1)(B).

On August 17, 2022, this Court denied Bollinger's motion. *See* R. Doc. 21. The denial was based on the grounds that Bollinger had not established a potential impairment of its interests if the action is resolved without Bollinger, and that Bollinger's interests were adequately represented by the parties. Regarding permissive intervention, this Court found that it is undisputed that

Bollinger's claim has a common question of law and/or fact regarding whether the vessels were properly tied down.

The Court also denied Bollinger's request for permissive intervention because there was a conflict of interest in Phelps Dunbar's representation of Bollinger and Defendants, and the absence of a waiver of conflict.

### C. Instant Motion for Reconsideration

Bollinger filed the instant motion for reconsideration of its previous motion to intervene on October 10, 2022. R. Doc. 25. In its motion, Bollinger contends that with newly appointed counsel, any issues with the potential conflict of Phelps Dunbar's representation is remedied, and Bollinger may intervene under the permissive intervention prong of Rule 24(b). R. Doc. 25-1, p. 5. Additionally, Bollinger contends that intervention will not unduly delay or prejudice the adjudication of the original parties' rights as discovery is in its early stages and trial has now been reset to April 4, 2023. *Id*. at 6.

Further, Bollinger alleges that as this Court has already determined, the intervention shares common questions of law and fact with Gulf Island Shipyard's principal demand. *Id*. Bollinger contends that it is anticipated that discovery will include depositions of the same witnesses as well as review of the same documentation regarding the cause of any damages to the dock. *Id*. at 7.

Gulf Island filed an opposition to Bollinger's instant motion on October 18, 2022. R. Doc. 29. Gulf Island argues that while Bollinger has apparently retained new counsel and resolved the issue of a conflict of interest, the standard for intervention has not been met. *Id*. at 1.Essentially, it is Gulf Island's position that Bollinger's motion should be denied because: (1) no legal error or manifest injustice exists to warrant reconsideration; and (2) as the Court has previously held, intervention is unnecessary as Bollinger's interests will be adequately protected by Gulf Island's

original suit. *Id*. at 2. Further, Gulf Island argues that Bollinger's intervention still seeks to assert a new claim and create an entirely new action rather than join in the lawsuit that already exists. *Id*.

Bollinger filed a reply to Gulf Island's opposition on October 24, 2022. R. Doc. 30. In its reply, Bollinger reemphasizes its arguments in support of its instant motion and contends that its intervention will not create an entirely new lawsuit. R. Doc. 30-1, p. 4. Bollinger further argues that Gulf Island is not protecting it interests nor can it adequately represent Bollinger's interests because Bollinger's claims against Gulf Island arise in contract and in tort. *Id*. Bollinger alleges that Gulf Island has taken a significantly different position from Bollinger regarding the issue of liability for the damage to the facility. *Id*.

Specifically, Bollinger contends that its goal differs as Bollinger seeks not only to have Gulf Island satisfy its contractual obligations, which are not contingent upon Gulf Island's recovery from Defendants, but also to hold Gulf Island accountable for its tortious conduct. *Id*. at 5. Furthermore, Bollinger argues that should Gulf Island fail to obtain a judgment to satisfy its obligations to Bollinger, Bollinger's interests would be adverse to Gulf Island because it would have to recover the remainder of what it owed from Gulf Island. *Id*. Therefore, Bollinger alleges that the parties have competing interests and at least seek different outcomes and have adverse interests. *Id*.

Additionally, Bollinger argues that even if its interests were adequately represented by Gulf Island and Gulf Island was taking the necessary steps to fully protect Bollinger's interests, permissive intervention is warranted. *Id*. Bollinger contends that it has a contractual right, which Gulf Island acknowledges exists, to recover from Gulf Island as well as a right to pursue a negligence based tort recovery. *Id*.

With respect to Gulf Island's argument that Bollinger's intervention would cause delay and prejudice because it would create a new lawsuit, Bollinger refutes this. *Id*. at 8. Bollinger contends that Gulf Island's argument that a separate case involving Bollinger's contractual claims that Gulf Island would have to defend is without merit. *Id*. Bollinger alleges that Gulf Island has admitted that it is contractually obligated to repair or replace the damage occasioned to Bollinger's facility. *Id*.

It appears as though it is Bollinger's contention that since the extent of damages owed and the cost of repair are the only resolved issues regarding Bollinger's contractual claims, that these issues will be litigated in the present suit with or without Bollinger's intervention. Therefore, Bollinger argues that its contractual claims against Gulf Island will not cause undue delay or prejudice to the main parties. *Id*. at 9.

Bollinger further argues that should it be forced to file a separate action, the disposition of this action "may as practical matter impair or impede Bollinger's ability to protect its interests." *Id*. Bollinger contends that it seeks to assert tortious claims against Gulf Island related to Gulf Island's tortious conduct in addition to its contractual obligations. *Id*. Bollinger alleges that the tort claims are predicated on the same set of operative facts, claims, and defenses of Gulf Island's underlying lawsuit. *Id*.

Further, Bollinger argues that while Gulf Island asserts that Bollinger should file a separate lawsuit for Bollinger's breach of contract claims, that Gulf Island has stated it would tender and assert third-party claims against Defendants under Fed. R. Civ. P. 14(c). Bollinger contends that by doing so, it would create two separate lawsuits with the same claims and parties, and result in duplicative discovery requests but also potentially conflicting judgments. *Id*.

II.   **Standard of Review**

While the Federal Rules do not recognize a "motion for reconsideration," it has recognized

that such a motion may challenge a judgment or order under Fed. R. Civ. P. 54(b), 59(e), or 60(b).

Fed. R. Civ. P. 59(e) also allows courts to alter or amend judgments after entry. Fed. R. Civ. P.

54(b) allows for reconsideration of interlocutory orders. While the Court has "considerable

discretion" in deciding whether to grant a motion for reconsideration, it must "strike the proper

balance between two competing imperatives: (1) finality and (2) the need to render just decisions

on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355

(5th Cir. 1993).

The Fifth Circuit has instructed that reconsideration is "an extraordinary remedy that

should be used sparingly," with relief being warranted only when the basis for relief is "clearly

establish[ed]." *Schiller v. Physicians Res. Grp, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Castrillo

v. Am. Home Mortgage Servicing, Inc.*, No. 09-4369 R, 2010 U.S. Dist. LEXIS 33179, 2010 WL

1424398, at *3 (E.D. La. Apr. 5, 2010). Generally, courts in the Eastern District of Louisiana

have considered four factors in deciding motions for reconsideration:

> (1) the motion is necessary to correct a manifest error of law or fact upon which the
>      judgment is based;
> (2) the movant presents newly discovered or previously unavailable evidence;
> (3) the motion is necessary in order to prevent manifest injustice; or
> (4) the motion is justified by an intervening change in controlling law.[1]

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal

theories, or arguments . . . .'" *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th

Cir. 2004)). Instead, such motions "serve the narrow purpose of allowing a party to correct

manifest errors of law or fact or to present newly discovered evidence." *See Waltman v. Int'l Paper*

---

[1] *See, e.g., Castrillo*, 2010 U.S. Dist. LEXIS 33179, 2010 WL 1424398, at *4

*Co.*, 875 F.2d 468, 473 (5th Cir. 1989). "It is well settled that motions for reconsideration should not be used . . . to re-urge matters that have already been advanced by a party." *Helena Labs. Corp. v. Alpha Sci. Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing *Browning v Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

Regarding intervention, Rule 24(a) provides that the court must permit anyone to intervene who (1) is given an unconditional right to intervene by a federal statute or (2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Fed. R. Civ. P. 24(a).

To show it has an interest relating to the subject matter of the main action, Bollinger must demonstrate it has "a direct, substantial, legally protectable interest in the action, meaning 'that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant.'" *In re Lease Oil*, 570 F.3d at 250 (quoting *Cajun Elect. Power Co-op. v. Gulf States Utils., Inc.*, 940 F.2d 117, 119 (5th Cir.1991)).

### III.  <u>Analysis</u>

Before the Court can address Bollinger's instant motion, the Court must first address whether reconsideration of Bollinger's previous Motion to Intervene is warranted. Four factors are considered in deciding motions for reconsideration including: (1) the movant demonstrates the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; (2) the movant presents new evidence; (3) the motion is necessary to prevent manifest injustice; and (4) the motion is justified by an intervening change in the controlling law. Fed. R. Civ. P. 59(e).

Here, the only new fact that Bollinger has presented as a basis for reconsideration is that it has retained new counsel and has seemingly remedied the conflict in representation. However,

Bollinger's new retention of counsel does not fall under any of the four factors contemplated for reconsideration as described above, nor does Bollinger address these factors. Bollinger's instant motion simply seeks reconsideration of permissive intervention based on previously rejected arguments that it attempts to rehash. *See Namer v. Scottsdale Ins. Co.*, 314 F.R.D. 392, 392 (E.D. La. 2016) (finding that a motion for reconsideration may not be used to rehash rejected arguments). Therefore, Bollinger's motion does not warrant reconsideration of the Court's prior decision.

Nevertheless, the Court will once again address why, notwithstanding meeting the criteria for reconsideration, permissive intervention is still improper. In the present motion, Bollinger seeks permissive intervention under Rule 24(b) for several reasons. First, it is Bollinger's position that its claim and the main action have a question of law or fact in common. Second, Bollinger argues that intervention will not unduly delay or prejudice the adjudication of the main parties' rights. Third, Bollinger alleges that with its retention of new counsel, any potential conflict regarding Phelps Dunbar's representation is eliminated. Finally, Bollinger contends that intervention is necessary because its interests will not be adequately protected.

Rule 24(b)(1)(B) provides that a court may permit intervention by anyone who "has a claim or defense "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). However, "[t]he intervention rule is intended to prevent multiple lawsuits where common questions of law or fact are involved but is not intended to allow the creation of whole new lawsuits by the intervenors." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994).

Indeed it is undisputed that the Bollinger's claim has a common question of law and/or fact regarding whether the vessels were properly tied down. However, it is clear that Bollinger seeks to assert a new claim rather than join in the lawsuit that already exists. Its proposed intervention is

to assert a breach of contract claim against Gulf Island. Therefore, this proposal is ultimately antagonistic to Bollinger's own interests which is to recover the maximum amount from defendants. The proposed intervention is in direct conflict with the current theory proposed by the plaintiff and would completely change the dynamics of the case.

Moreover, while Bollinger says that Gulf Island is contractually obligated to restore its facility, it proposes that Gulf Islands efforts to acquire a money judgment to do just that, apparently does not protect their interest. If by chance Gulf Island recovers damages and falters on its obligation to fully restore the facility, then Bollinger can institute a lawsuit pursuant to its lease agreement. Further, it is undisputed that Gulf Island and Bollinger entered into a lease agreement and that Gulf Island is contractually obligated to repair or replace damage occasioned to Bollinger's facility. *See* R. Doc. 1, p. 7. Bollinger and Gulf Island share the same ultimate goal and objective, which is monetary relief to repair Bollinger's facility damaged by the breakaway during Hurricane Ida.

When rendering a decision on a request for permissive intervention, "a district court shall consider, among other factors, whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues." *Theriot v. Par. of Jefferson*, CIVIL ACTION NO. 95-2453 SECTION "K"(1), 1996 U.S. Dist. LEXIS 9710, at *1 (E.D. La. July 8, 1996). Furthermore, "[t]here is a presumption that existing parties can adequately represent the intervenors' interests." *Id.*

Bollinger argues that there is a risk of inconsistent judgments if they are not permitted to intervene based upon its explanation of a hypothetical separate lawsuit. Bollinger essentially contends that a judgment in its hypothetical separate lawsuit in tort would likely differ from and be broader than Bollinger's rights related to its contractual claims. The Court is not persuaded. As

the court in *Theriot* held, with respect to rebutting the presumption of adequate representation,"…the intervenors must produce something more than speculation as to the purported inadequacy." *Id*. Whether Gulf Island recovers enough in its claim against the existing defendants or not, presumably it would still be obligated under the lease.

Gulf Island has conceded and does not dispute that it is in its interests to obtain the maximum amount of recovery from the Defendants so that it may satisfy any contractual obligations to Bollinger and repair its facility. R. Doc. 29, p. 13. Moreover, as the case that Gulf Island has cited pointed out, allowing a permissive intervention when the proposed intervenor and existing party share the same goal, it "unnecessarily expands the nature of [the] proceeding and increases the time and amount of discovery that may be required." *Louisiana v. DOC*, No. 21-1523, 2021 U.S. Dist. LEXIS 241960, at *15 (E.D. La. Dec. 20, 2021).

Bollinger argues that its intervention will not affect deadlines in the case. Specifically, Bollinger contends it is "anticipated that discovery will include depositions of the same witnesses as well as review of the same documentation regarding cause of damages." Bollinger's argument further solidifies this Court's previous decision to deny intervention. Because Gulf Island can adequately protect Bollinger's interests because they share the same goal, there is no reason for Bollinger to intervene and conduct depositions and document review in duplicity.

Therefore, since Gulf Island can adequately protect Bollinger's interests and Bollinger can protect its interests through some other means, intervention is unwarranted. While Bollinger has seemingly remedied the representation conflict by retaining new counsel, the claims it seeks to assert would create an entirely new case rendering intervention improper.

**IV.    <u>Conclusion</u>**

Accordingly,

**IT IS ORDERED** that Bollinger Shipyards, L.L.C.'s Motion for Reconsideration of its Motion to Intervene **(R. Doc. 25)** is **DENIED.**

New Orleans, Louisiana, this 24<u>th</u> day of January 2023.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**