UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GULF ISLAND SHIPYARDS, LLC ET AL** | CIVIL ACTION |
| **VERSUS** | NO. 22-154 |
| **LASHIP, LLC, ET AL** | SECTION "L" (5) |

### ORDER & REASONS

Before the Court is Plaintiff Gulf Island Shipyards, LLC's (Gulf Island") Motion for Reconsideration. R. Doc. 78. Defendants LaShip LLC and Reel Pipe (collectively "Defendants") oppose the motion. R. Doc. 85. Gul Island filed a reply. R. Doc. 86. After reviewing the record, parties' briefing, applicable law, and hearing oral argument, the Court rules as follows.

I.  BACKGROUND:

On August 29, 2021 Hurricane Ida struck the Houma Navigation Canal upon which Gulf Island and LaShip each had facilities. Gulf Island alleged that a vessel moored at LaShip's facility, namely, the Betty Chouest, broke away from its moorings at the LaShip facility and swept downstream towards Gulf Island's facility where it struck and damaged a dock and two of Gulf Island's ships. The Betty Chouest's impact allegedly unmoored one of these two ships, namely the Wild Horse, which then attached to the Betty Chouest and both vessels continued to sweep through the Canal allegedly striking more of Gulf Island's property, including another dock and more vessels. Gulf Island alleged that LaShip was negligent because it did not properly moor and secure the Betty Chouest. Gulf Island sought damages for the cost of investigation and surveying the damage, the cost to repair to their ships, docks, and structures, and lost profits caused by the downtime of their facilities.

1

LaShip generally denied liability and offered affirmative defenses including (1) Plaintiff fails to state a cause of action, (2) the damages were caused by Plaintiff's negligence, and (3) force majeure. Furthermore, LaShip argued that pursuant to 46 U.S.C. § 30501 et seq., if liability is found, their liability as a shipowner should be limited to the value of their interest in the Betty Chouest. Defendants additionally assert a counterclaim against Gulf Island Shipyards, alleging that as a result of Gulf Island's inadequate mooring of the Wild Horse, the Wild Horse broke free, drifted uncontrollably down the Canal, and allided with the Betty Chouest and caused it damage for which Gulf Island Shipyards is liable.

A non-jury trial was held on December 11, 2024 and the Court issued its Findings of Fact and Conclusions of Law, holding that both parties were negligent in the mooring of their respective vessels and assessed comparative fault at 65% for Gulf Island and 35% for LaShip. R. Doc. 77 at 21.

## II.     PRESENT MOTION

Before the Court is Gulf Island's motion for reconsideration of the Court's Findings of Fact and Conclusions of Law, urging the Court to make a limited modification with respect to comparative fault and damage award. R. Doc. 78. First, Gulf Island argues that the Court's assignment of comparative fault in the 65/35 ratio, as opposed to on a 50/50 basis, was a manifest error because the Court did not make mention of Gulf Island's hiring of DLS Marine to assist with mooring plans, nor Gulf Island's compliance with DLS Marine's plan. *Id.* at 3-4. Gulf Island argues that the evidence at trial showed LaShip's vessels broke free first, well before peak hurricane winds hit the area, and thus the parties should be found to be equally negligent, 50/50. *Id.* at 5-6.

Next, Gulf Island argues the Court erred in finding Wild Horse damages of $503,130.51, pursuant to an earlier estimate for the steel hull repairs, instead of the later estimate of $804,420.00,

2

because the later estimate was based upon an actual estimate and quotation from Bollinger whereas the earlier one was simply an estimate. *Id.* at 6-7. Gulf Island argues that the explanation for this increase, which the Court found lacking, was on the basis of a real quote for repairs as opposed to a preliminary estimate, and therefore this is manifest error of fact. *Id.*

Gulf Island also disputes the Court's finding that the War Horse was not entitled to any recovery because the evidence did not show contact with a Chouest vessel, arguing that the vessel which remained partially moored following the storm and yet had damage, specifically orange paint. *Id.* at 7-10. Gulf Island urges the Court to reconsider its finding as to the War Horse on the basis of this evidence. Similarly, Gulf Island contests the Court's award of the full claimed damages to the Betty Chouest, arguing that LaShip and Reel Pipe failed to prove that all of these claimed damages were caused by a collision with the Wild Horse, as opposed to collisions with other breakaway Chouest vessels, or whether they were even caused Hurricane Ida. *Id.*

Additionally, Gulf Island argues the Court erred in denying damages for the Salvo pointing to orange paint transfer on the Salvo which Gulf Island contends was caused by the Betty colliding with the Salvo. *Id.* at 13-14. Last, Gulf Island urges the Court to reconsider awarding damages for drydocking and towing associated with evaluating the damages to the Wild Horse and War Horse. *Id.* at 14.

Defendants oppose the motion, arguing that Gulf Island is seeking to merely relitigate the issues explored in depth at trial and that reconsideration is not a proper vehicle for such an effort. R. Doc. 85 at 4-5. Defendants argue that, contrary to Gulf Island's assertions, the Court did not erroneously apportion fault on the basis of Gulf Island's use of mixed mooring lines alone, noting that the Court heard testimony about each party's mooring arrangement and considered these arrangements in light of the specific circumstances facing each party. *Id.* at 5-9. Next, Defendants

3

argue that Gulf Island is presenting a new argument that it did not present at trial with regard to the War Horse's 59% increase in repair estimates and that reconsideration is not the proper place to introduce new arguments. *Id.* at 9-11. Defendants remind the Court that the multitude of evidence and eyewitness testimony demonstrated that nobody saw any Chouest vessel make contact with the War Horse and that the evidence introduced at trial supports the Court's denial of damages to the War Horse; thus the Court committed no manifest error on this matter. *Id.* at 11-15.

Defendants argue that the Court weighed the considerable evidence and testimony on the damages to the Betty Chouest and found without error that Defendants were entitled to the damages awarded. *Id.* at 15-20. Further, contrary to Gulf Island's assertion that the Court did not reduce Defendants' damages as it did its own, Defendants note that the Court only awarded damages to the Betty Chouest based upon repair invoices in the record – which did amount to a decrease in damages as compared to those sought by Defendants. *Id.* Last, Defendants assert no manifest error in the Court's denial of damages for drydocking and for repairs to the Salvo and reasserts that the Court weighed the evidence and made its conclusions based upon a full evidentiary record. *Id.* at 20-21. Accordingly, Defendants urge no manifest error of fact or law exists to warrant reconsideration and urges this Court to deny Gulf Island's motion. *Id.* at 22-23.

### III. APPLICABLE LAW

Since the Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration, such motions are treated as either a motion to challenge a judgment or order under Rule 54(b), 59(e), or 60(b). *Holmes v. Reddoch*, 19-12749, 2022 WL 16712872 at *2 (E.D.La. Nov. 4, 2022). While Rules 59 and 60 apply to final judgments only, "if a party seeks reconsideration of an order that adjudicates fewer than all the claims among all the parties prior to entry of final judgment, then Rule 54(b) controls." *Id.*

Rule 54 provides that district courts "possess[] the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco*, 659 F.2d 551, 552 (5th Cir. 1981). Under such a standard, district courts can be "more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017). Though this standard is lower than the threshold used for reconsideration of judgments under Rule 59, courts still "look to similar considerations as those it considers when evaluating Rule 59(e) motions." *Edwards v. Take Fo' Records, Inc.*, 19-12130, 2020 WL 3832606 at *11 & n.2 (E.D. La. July 8, 2020). These considerations include "(1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) a manifest error in law or fact." *Henry v. New Orleans La. Saints, L.L.C.*, No. 15-5971, 2016 WL 3524107, at *2 (E.D. La. June 28, 2016). Courts may also grant reconsideration when "necessary to prevent manifest injustice." *Fields v. Pool Offshore, Inc.*, No. 97-3170, 1998 WL 43217, at *2 (E.D. La. Feb. 3, 1998).

Similarly, Rule 52(b) permits a party no later than twenty-eight days following entry of judgment to file a motion seeking to amend the Court's judgment or to urge the Court to make additional findings. Fed. R. Civ. P. 52(b). The purpose of such a motion is to allow the Court to correct manifest errors of law and fact or consider newly discovered evidence. *Avondale Indus. Inc. v. Board of Comm'rs of Port of New Orleans*, No. 94-2786, 1996 WL 413645, at *1 (E.D. La. July 24, 1996). "Such a motion is made pursuant to Rule 59." *Marquette Transp. Co., LLC v. Century Dream M/V*, No. 16-552, 2-17 WL 11536185, at *1 (E.D. La. Mar. 30, 2017).

## IV. DISCUSSION

The Court begins by grounding its analysis in the standard for reconsideration. To grant Gulf Island's motion, the Court must find that either new controlling or intervening law applies,

new evidence became available, or that there was a manifest error in law or fact. See Henry, 2016 WL 3524107, at *2. After hearing the parties present their arguments and after a review of the briefing, the Court concludes that Gulf Island cannot meet this strict standard.

The arguments presented on the apportionment of fault are unavailing. The Court described in detail its reasoning for holding Gulf Island comparatively more at fault than LaShip, pointing to the mixed mooring arrangements as used on the War Horse and Wild Horse. *See* Findings of Fact & Conclusions of Law, R. Doc. 77, at 18-20, ¶¶ 14-17. The Court considered that LaShip too used a mixed mooring arrangement, but concluded based on the credible evidence at trial that the defects in this arrangement were less serious than those of Gulf Island. *Id.* at 20-21, ¶¶ 19-20. The Court nevertheless found LaShip somewhat at fault. *See id.* At this juncture, the Court finds Gulf Island has not shown any manifest error in law or fact as to this issue.

Turning to the damage awards for the War Horse, Betty Chouest, Salvo, and drydocking expenses, the Court again finds no error to warrant reconsideration. The Court considered witness testimony, deposition testimony, and various exhibits entered into evidence throughout the trial in making its findings and conclusions. At oral argument on this motion, Gulf Island pointed to no new evidence, no change in law, and no manifest error. Instead, it reasserts much of the same arguments put forth at trial which were already addressed by the Court, and reconsideration is not a proper vehicle for the Court to re-weigh the evidence already considered.

Specifically, at oral argument, Gulf Island raised two arguments that the Court addresses here. First, Gulf Island pointed to Exhibit 35 as an explanation for the increase in steel repair costs for the Wild Horse. Gulf Island represents that the increase from approximately $500,000 to $800,000 can be credibly explained by the exhibits themselves as being the difference between a pre-bid estimate and the actual estimate from Bollinger. Gulf Island acknowledged that no witness

specifically explained this at trial, but that the exhibits speak for themselves and explain this difference as a function of a real bid from a real shipyard offering to do the specific work required. In response, LaShip acknowledged that increases between first estimate and ultimate cost are common, and that the Betty Chouest had an increase between its first estimate and the ultimate cost of repairs as well. However, LaShip argued that this particular increase was so substantial as to be unreasonable. The Court agrees. The Court found that this increase was unexplained by credible evidence. *See* Findings of Fact and Conclusions of Law, at 8. Specifically, the Court found that "no credible explanation was given to explain these increased costs and no associated increase was included on the War Horse's estimated repairs for similar line items." *Id.* Absent more evidence to explain why the cost would have increased by 59% as to only the Wild Horse's steel repairs, the Court finds no manifest error in this finding.

Second, at oral argument Gulf Island asserted that some of the Betty Chouest's damages could have been caused not by Gulf Island vessels but instead by the loose LaShip vessels that also broke free. Because this Court found that LaShip bore some liability for its inadequate mooring of its northernmost tier, and that this tier's breakaway led to other breakaways along the LaShip facility, Gulf Island argued that such a finding as to the Betty is not inconsistent with the Court's ruling in this case. The Court however disagrees on this point. In its Findings of Fact and Conclusions of Law, the Court noted that the LaShip northernmost tier "broke loose and cascaded down, causing the other vessels to come loose and float freely." *Id.* at 5. The Court later stated that "the breakaway cascaded down the tiers, causing all of the moored vessels to break loose" and that upon this tier's "failing, the rest of the tiers soon followed." *Id.* at 16-17. The Court never found specifically that other Chouest vessels moored at LaShip, upon breaking away, *contacted* the remaining tiers and thereafter causing them to break loose as a result of contact. The Court only

7

found that as the northernmost tier broke free, the wind from the north – which is what created this unique vulnerability in this northernmost tier – suddenly had direct impact on the next tier, and so forth. Further, to the extent that any tiers were moored to the same mooring structures on the shore – such as a stern line of one tier and a bow line on another tier both attached to the same mooring structure – such cascading effects also contributed to these breakaways.

In any event, the Court finds no manifest error in its finding that the Betty Chouest was entitled to the damages awarded and its Findings of Fact and Conclusions of Law support this ultimate determination.

Accordingly, for the foregoing reasons, the Court **DENIES** Gulf Island's motion for reconsideration.

New Orleans, Louisiana, this 25th day of April, 2024.

_____
United States District Judge